# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH DAYWITT, Jewish Liaison; and ROY HUGHES, Islamic Liaison, | Case No. 19-cv-1632 (JRT/ECW) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| VOLUNTEER SERVICES DEPARTMENT; CHRIS SELL; NICK LAMMI, and CHAD MESOJEDEC, in their official capacities and their individual capacities, | |
| Defendants. | |

Plaintiffs Kenneth Daywitt and Roy Hughes are clients of the Minnesota Sex Offender Program ("MSOP"). Daywitt practices orthodox Judaism; Hughes practices Islam. For some time leading up to the events at issue in this lawsuit, Daywitt and Hughes acted as the liaisons between their respective religious communities at MSOP and the staff at MSOP. In January 2019, however, MSOP altered its Spiritual Practices Policy to require that all religious liaisons attend therapeutic community meetings. Daywitt and Hughes refused to attend those meetings and were subsequently stripped of their roles as liaisons.[1] In this action, Daywitt and Hughes allege that their removal from the liaison positions violates the Religious Freedom Restoration Act ("RFRA"), 42

---

[1] All statements of fact this Recommendation are derived from the Complaint (Dkt. 1), whose allegations are assumed to be true. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).

U.S.C. § 2000bb et seq.; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.; and 42 U.S.C. § 1983.

Neither Daywitt nor Hughes paid the filing fee for this matter, instead applying for *in forma pauperis* ("IFP") status.  (*See* Dkt. Nos. 2, 3, & 5.)  Those IFP applications are now before the Court and must be reviewed before any other action may be taken in this matter.

After review, this Court concludes that Daywitt and Hughes qualify financially for IFP status.  That said, an IFP application may be denied and an action may be dismissed when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service.").  In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Aten*, 511 F.3d at 820.  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id*. at 570.  In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Pro se

2

complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Plaintiffs' claims under RFRA and RLUIPA are substantively identical and will therefore be considered in tandem. *See Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) ("RLUIPA . . . allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA.'") (quoting *Gonzales v. O Centro Espírita Beneficente Uniõ do Vegetal*, 546 U.S. 418, 436 (2006)). Under RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person —
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA (and by extension RFRA) thus requires, as a threshold matter, that Daywitt and Hughes plausibly allege that MSOP officials have placed a substantial burden on their ability to exercise their religions. *See Murphy v. Missouri Dep't of Corrections*, 372 F.3d 979, 988 (8th Cir. 2004). The Eighth Circuit has explained that

> [i]n order to be considered a "substantial" burden, the governmental action must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to

3

> engage in those activities that are fundamental to a person's religion.

*Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (quotations omitted).

Even after taking all statements in the Complaint as true and drawing all reasonable inferences in favor of Daywitt and Hughes, the Complaint does not plausibly allege that Plaintiffs' ability to practice their religions has been substantially burdened. Neither Plaintiff alleges that the change in MSOP policy inhibits or constrains his ability to practice, adhere to, or engage in Judaism or Islam. Instead, Daywitt and Hughes allege that the change in MSOP policy inhibits their ability to act as liaisons. According to Daywitt and Hughes, as liaisons, they "are responsible to communicate to their religious group(s) any and all communication from the facility to their group" and "were elected by their religious groups as the go-between for administration and clients." (Dkt. 1 ¶¶ 11-12.) However, acting as a liaison is alleged neither to be a "central tenet" nor an activity "fundamental" to the practice of either Plaintiff's faith. (*See id.*) For example, nothing about Daywitt's Judaism (at least insofar as is alleged in the Complaint) requires him, as a matter of faith, to act as an MSOP liaison. (*See id.* ¶ 13 (acknowledging that other individuals besides Daywitt have previously acted as liaison for MSOP clients of Jewish faith).) The same can be said with respect to Hughes's practice of Islam. Similarly, the absence of a facility liaison for a particular faith is not alleged to preclude, inhibit, or deter MSOP clients from practicing that faith.[2] Because Daywitt and Hughes

---

[2] The closest Plaintiffs come to such an allegation is that "under Islamic law it is required that the one whom is most knowledgeable and can recite the most Qur'an is required to be the person who makes any decisions for the Ummah (community). This

have failed to plausibly allege that the change in MSOP policy places a substantial burden on their religious exercise, their claims under RFRA and RLUIPA fail as a matter of law.

The legal standard for constitutional free exercise claims brought pursuant to § 1983 — and the forms of relief available for violations of § 1983 — differs in some respects from those brought under RLUIPA and RFRA. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). But just as under RLUIPA and RFRA, Plaintiffs must establish that the governmental activity at issue places a substantial burden on their religious practice in order to state a claim arising under the Free Exercise Clause. *Id*. Again, no such substantial burden has been plausibly alleged in the Complaint. Any claims arising under the Free Exercise Clause therefore ultimately fail for the same reason that the RLUIPA and RFRA claims of Daywitt and Hughes fail.

Finally, Daywitt and Hughes also present a claim under § 1983 that they classify as one for "negligence," but that might more accurately be categorized as a claim that their due process rights were violated by the change in MSOP policy.[3] (*See* Dkt. 1 ¶¶ 41-46.) Making out such a due process claim, however, would require Daywitt and Hughes

---

would be Hughes currently." (Dkt. 1 ¶ 22.) But the Complaint does not allege that removing Hughes from his role liaison has inhibited his ability to make decisions for the Ummah.

[3]     "Mere negligence is not sufficient to support a cause of action under § 1983." *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam). The Court lacks original jurisdiction in this action over any claims of negligence arising under state law, and the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims where, as recommended here, all federal claims are dismissed prior to trial. *See Hervey v. County of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008).

to establish that they have a liberty interest in the liaison positions that they have been deprived of due to the change in MSOP policy. *See, e.g.*, *Wong v. Minnesota Dep't of Human Services*, 820 F.3d 922, 935 (8th Cir. 2016). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016) (quotation omitted). "State laws and regulations create a protectable liberty interest only when they (1) place substantive limitations on the exercise of official discretion; and (2) contain explicit mandatory language comprising specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow." *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993) (quotations omitted).

Plaintiffs do not allege the source of their putative liberty interest in continuing to act as liaisons. No such liberty interest to act as a liaison is inherent in the U.S. Constitution. Nor have plaintiffs plausibly alleged that the Spiritual Practices Policy at issue creates such a liberty interest; nowhere, for instance, does Daywitt or Hughes claim that the policy places substantive limits on the exercise of MSOP officials' discretion in selecting a liaison. Their final constitutional claim thus fails as a matter of law.[4]

For those reasons, it is recommended that this action be dismissed without prejudice in its entirety. *See* 28 U.S.C. § 1915(e)(2)(B).

---

[4]   Plaintiffs also suggest that the change in policy was brought about in retaliation for prior litigation initiated by Daywitt and Hughes (Dkt. 1 ¶¶ 27-28), but no formal claim of retaliation is pleaded in the Complaint (*see id*. ¶¶ 29-46).

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. This matter be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The applications to proceed *in forma pauperis* of plaintiffs Kenneth Daywitt and Roy Hughes (Dkt. 2, 3, & 5) be **DENIED**.

Dated: October 11, 2019         *s/Elizabeth Cowan Wright*
                                ELIZABETH COWAN WRIGHT
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).